# HOWARD KEYS v. ELIJAH MASON.

1 TRESPASS TO TRY TITLE.—It is a rule, old as the action of trespass to try title, that when the parties claim under a common source of title it is not necessary to trace the title further back than the common source. The act of September, 1871, is only declaratory of what has been the rule from time immemorial.

2 SAME—PLEADING.—It is not necessary that plaintiff allege that both claim under a common source to entitle him to prove such fact. It is only necessary to allege title and trespass by defendant, with an indorsement on the petition that "the action is brought as well to try title as for damages."

3. SAME—TITLE ON WHICH PLAINTIFF MAY RECOVER.—See discussion of the action of trespass to try title and of the title to be proved by plaintiff.

4. LIMITATION.—A purchaser holding a bond for title and not paying the purchase-money cannot prescribe against his vendor, nor can a purchaser from such vendee with notice defend by limitation against the original vendor.

5. SAME—ADVERSE POSSESSION.—The possession by a vendee holding a bond for title and by his assigns with notice is not adverse to the vendor, who, in default of payment of purchase-money, may recover the premises by action of trespass to try title.

APPEAL from Smith. Tried below before the Hon. M. H. Bonner.

Mason brought an action of trespass to try title against Keys. The defendant pleaded limitation of three, five, and ten years. By amendment the plaintiff set out the facts of his case, alleging fraud, and asking that his contract with the vendor of Keys be canceled.

The facts show that on the 14th day of October, 1857, Elijah Mason, the appellee, exchanged 320 acres of land, known as the Crockett's Bluff tract or William Hickman survey, with one Hugh Neel, for 320 acres of land known as the A. J. Crockett pre-emption survey. Mason gave Neel a bond for title to the Crockett's Bluff tract or Hickman survey, and Neel gave Mason a bond for title to the Andrew J. Crockett pre-emption survey, each giving to the other possession of the lands ; both of the title bonds were

duly recorded. On the 21st day of April, 1858, the said Hugh Neel caused and procured David Collins and his wife, Mary A. Collins, who held the legal title to the Andrew J. Crockett pre-emption survey No. 885, to make a deed to said land to one Nancy Neel, who was the wife of the said Hugh Neel. On the 12th day of August, 1863, the said Hugh Neel and his wife conveyed the Crockett's Bluff tract or Hickman survey No. 838 to Martha S. Lindsey by a quit-claim deed. On the 10th day of April, 1871, Nancy Neel conveyed to appellant the Andrew J. Crockett pre-emption survey No. 885, claiming to sell the same as her separate property, and also in the capacity of surviving wife of the said Hugh Neel, deceased. On the 10th day of July, 1863, Hugh Neel transferred the bond of Elijah Mason for titles to the Crockett's Bluff or Hickman survey No. 838 to H. Lindsey, and on the 10th day of July, 1869, H. Lindsey, by his attorney in fact, transferred the same bond to Howard Keys, the appellant. On the —— day of March, 1869, H. Lindsey, by his attorney in fact, J. B. Douglas, conveyed the same land to Howard Keys; that is, the Crockett's Bluff tract or Hickman survey No. 838.

There was verdict and judgment for plaintiff. Motion for new trial was overruled, and Keys appealed.

No brief for appellant came to the reporters.

*Stephen Reeves* and *Jones & Henry,* for appellee, cited Linthecum *v.* March, 37 Tex., 350; Stephens *v.* Hix, 38 Tex., 656; Bradshaw *v.* Mayfield, 24 Tex., 481; Andrews *v.* Smithwick, 20 Tex., 111; Austin *v.* Talk, 20 Tex., 164; McGreal *v.* Wilson, 9 Tex., 426; Hatch *v.* Garza, 22 Tex., 176; Willis *v.* Bullit, 22 Tex., 330; Garrett *v.* Chambliss, 24 Tex., 618; Browning *v.* Estes, 11 Tex., 237; Walker *v.* Emerson, 20 Tex., 711; Secrest *v.* Jones, 30 Tex., 603; Tyler on Ejectment and Adverse Enjoyment, 156 and 876.

MOORE, ASSOCIATE JUSTICE.—The first ground assigned for a reversal of the judgment is that defendant not having

pleaded that he held the land sued for under a common source with plaintiff, the latter should have been required to deraign a title from and under the sovereignty of the soil.

It is a rule, as old as the action of trespass to try title, that when the parties claim under a common source of title it is not necessary to trace the title further back than the source from which they both claim. In this, the act of September 2, 1871, supplementary to the act to provide the mode of trying title to lands, is only declaratory of what has been the law from time immemorial. The only change which this statute makes, if indeed it makes any, is in prescribing how the fact that the defendant claims from a common source with the plaintiff may be proved without giving evidence of title in the defendant. This statute has no reference to the rule of pleading in the action of trespass to try title. In that respect it does not alter the law which requires of the plaintiff merely a formal petition alleging a trespass, with an indorsement that the action is brought as well to try title as for damages, to which the defendant need put in no other plea than that of "not guilty."

But if it was necessary that it should be averred that the parties claimed under a common source to warrant the admission of proof of the fact, it certainly was only necessary for the plaintiff who desires to prove it to make the allegation. This he did. Evidently the fact that the defendant does not admit or allege in his answer that he claims the land under a common source of title with the plaintiff would not deprive the latter of the benefit of this statute. It is true the possession of the defendant entitles him to a judgment against the plaintiff, unless the latter shows a *prima facie* title. He does this when he deraigns title from the sovereignty of the soil down to himself; or if he shows title out of the Government and subsequent possession for sufficient length of time to toll the right of entry, or merely a prior possession to that under which the defendant claims

with a regular chain of title connecting himself with such possession; or by proof that defendant and himself claim the land under a common source of title and that his is the better right or superior title under such common source. Proof of title by the plaintiff in either mode may not conclusively establish his right to the land against the defendant, but it overcomes the presumption of right from his possession, and throws upon him the burthen of disproving the plaintiff's case or showing a superior title in himself; as, for example, that he holds under a title from the sovereignty of the soil of older date or superior right to that of the plaintiff; that by a subsequent possession to that on which plaintiff counts he has title by prescription, or has barred the plaintiff's right of recovery; or though he has a title under a common source with plaintiff he also has, or there is outstanding in a third party, a superior title to that which they claim from the common source, which it must not appear that he is estopped from setting up.

We have been induced to say this much as to proof of title by evidence that the parties claim under a common source because of the increasing difficulties from the lapse of time in deraigning titles from the Government, and that our predecessors seem to have expressed in the case of Linthecum v. March, 37 Tex., 349, a different view of this subject from that which we entertain.

The only other ground of error assigned which calls for notice is that the court declined to charge the jury on the defendant's pleas of limitation by adverse possession for three, five, and ten years.

The defendant asked no instructions on this or any other subject. As has been often said, a mere failure of the court to give a charge not asked is no ground for the reversal of the judgment. But there was no evidence which called for any instructions from the court on the defense of limitation or which would have warranted the court in giving them if any had been asked by the defendant. The party from

whom he purchased the land claimed it under an executory contract with the plaintiff, which had not been complied with. Though his immediate vendor executed to him a deed for the land, he took from him at the same time an assignment of the plaintiff's bond for title; he was therefore charged with notice in law and fact of the nature of his vendor's title, and until payment was made for the land he held it in subordination to plaintiff's better right. As he and his vendors had gotten possession on faith of this contract they could not claim to hold adversely to plaintiff without surrendering the possession thus acquired, or certainly without giving him notice of a repudiation of the contract and possession under it. (Tyler on Eject. and Adverse Enj., 876.)

The contract between plaintiff and Neel being executory, on the failure of the latter to comply with its terms, the former, as has been often held by this court, could sue for a specific performance, or abandon the contract and bring an action for the recovery of the land. (Browning v. Estes, 3 Tex., 462; Estes v. Browning, 11 Tex., 237; Walker v. Emerson, 20 Tex., 711; Secrest v. Jones, 30 Tex., 603; McAfee v. Robertson, 43 Tex., 591.) Defendant, of course, could acquire by his purchase no better title than his vendor had, unless he acquired it from some other source or by adverse possession, which, as we have said, he had never placed himself in a position to assert against plaintiff.

There being no error in the judgment, it is affirmed.

AFFIRMED.

[Chief Justice ROBERTS did not sit in this case.]